Good morning, your honors. May it please the court, my name is Susan E. Hill and I represent the petitioners, the Baquia family. Mr. Baquia and his son are here today due to an adverse credibility determination that the immigration judge made in their asylum claims. The BIA affirmed this adverse credibility determination and did not add additional analysis. Therefore, I will just address the judge's adverse credibility determination. What's our standard of review on an immigration judge's credibility decisions? Your honor, it is substantial evidence and the BIA also had its own standard of review. We don't have a problem with how the BIA adjudicated the claim. The judge's adverse credibility determination is problematic for two reasons. First, it failed to indicate with enough specificity or give cogent reasons for the judge's reasons to deny and disbelieve the respondent's testimony. I'm sorry, the petitioner's testimony. Also, the judge failed to elicit explanations for any perceived inconsistencies. And in the one instance where the judge did elicit an explanation, the judge failed to take that into consideration in his decision. That is required by case law set in this court most recently with Judge Gould's opinions, and I believe it was pronounced Shretta and relying on Soto-Alarte. The judge in his decision when he decided that Mr. Baquia lacked credibility did not list any specific inconsistencies, save for the issue of whether he included his wife and children in his asylum application. Instead, the judge gave a summary review of the facts that were written in Mr. Baquia's asylum statement, and then he gave a summary of the testimony that was given. He didn't address anything particularly except for that issue of the asylum application, not mentioning the wife and children. But after giving that summary, the judge's language was, and I made a quote, as pointed out above, the respondent's testimony is inconsistent with his asylum application in regard to the incidents that occurred to him in Guatemala. Respondent also failed to mention in his application that he had a wife and children in Guatemala, and his only explanation was that he told his lawyer, but she did not include that information in his asylum application. He also claimed that he mentioned that he had told the asylum officer at his interview, but there is no indication on his asylum application that he had indicated that he had a family in Guatemala. For the foregoing reasons, the court makes an adverse credibility finding against respondents, excuse me, because the court does not know what to believe in view of the respondent's rambling testimony and discrepancy between his original application and his testimony. Well, why isn't that good enough? The IJ starts out by saying that his application is not the same as his testimony, and it points out places where there are discrepancies. And I read his testimony, and it is rambling, and it's very hard to tell from the testimony what his story is. I disagree, Your Honor. I believe that the testimony does explain the sufficiency, enough evidence to set forth a claim. It established that he was a member of the military after he left the military. Was he working for the military for how long? For five years? For two years? From 71 to 77, although part of that time he was hospitalized due to injury. After he was released in 77, I believe the testimony clearly establishes that he worked as a volunteer, helping to train recruits for the Army. So he was not paid by the military, but he was, of course, And your understanding, he was doing that from 1979 to 1994? Roughly. Perhaps 77 or 79. I'm not sure when it started. Well, isn't that a discrepancy? I mean, I've looked at the testimony, and the immigration judge is very careful about trying to get him through to explain. There's two and a half years in the police department, two and a half years as a commander of the military reserves, and there are certainly discrepancies there. Well, and if I may, Your Honor, there's established case law in the circuit that discusses when an asylum application is not filled out with as much specificity or detail as would be desired, which I believe is what happened in this case. Reading the application, one could say it's a one-paragraph statement, and it too is, I suppose you could say, rambling in that it's a run-on sentence. It has no punctuation. It's one long sentence that purports to describe many instances. The grammar is not good. The syntax is not good. There are many spelling errors. It does not appear to have been filled out by a professional. Mr. Botqua said it was an attorney who filled it out. And it also doesn't contain some of the more dramatic things that he testified to. Correct, and there are some admissions as well. Mr. Botqua did say that an attorney helped to fill them out, but it was not signed by any person, and purportedly an attorney would have signed a document like that, or at least a paid legal professional would have employed much better language and had a better grasp of the English language to clearly indicate what did happen to him. This Court has a lot of precedent to support instances like that, and this case is a pre-real ID legislation case where if the application does not contain as much detail as desired, and especially in an instance which appears to be the case here where immigration applicants often do not have resources to hire appropriate legal help, they are not faulted entirely for those errors. In Mr. Botqua's case, I don't believe that his testimony is inconsistent with the ideas that the application intended to convey. The application did indicate that he was in the military, that he was in the police force, and the substance of his claim are the threatening letters that he received at his home. There was no finding that that information was inconsistent. He continued to receive the letters while he was training the recruits, and even recently up until prior to his departure. What do you do with this passage where the I.J. says, I'm confused about these letters because the one letter you got after your brother was killed said that if you did not leave you would be killed, but the letter you received in 1994 said if you did not come back you would be killed. Which is it? The answer is no. It said that if I didn't leave they were going to kill me. They were going to kill me, exactly. If you did not leave, yes, that they will kill me. Well, sir, you previously testified the letter that your wife received in 1994 stated if you did not surrender to them they would kill you. And then the lawyer said it would kill his family. The I.J. appeared to be trying to get him to explain his story. The I.J. may have been trying to get him to explain with a little bit more detail, but the I.J. never indicated that he was confused at that time and wanted some further information. Moreover, I don't think the sentiment expressed is necessarily conflicting. They wanted to kill him for his activities that were related with the military. If he surrendered himself, they would kill him. If he were found by the guerrillas, if he had not escaped from the country or if he had not left his job helping to train the guerrillas, they would find him and they would kill him. So whether they wanted him to bring themselves directly to them in order to kill him or whether they happened to find him because he was still in the country, the sentiment is still the same. Didn't he leave out in his testimony the 1994 actions involving the guerrillas and the things in the middle of the night, things that were pretty dramatic, and he didn't even mention them at all? He did, Your Honor. Excuse me. He did mention them, and I think the problem, again, goes back to comparing it to the written statement, which is not very sufficient. I still only have 57 seconds left. I will give you a minute for rebuttal, but can you tell me what we should do with the changed country conditions finding? The judge made that finding, but the BIA did not rule upon it, and the BIA had opportunity. Therefore, it should be remanded for that determination. Okay. Thank you. If we need to rely on it. Yes. May it please the Court. David Whatmore for the Attorney General. First, let me start off by saying I don't believe the Court needs to remand. Substantial record evidence supports the adverse credibility finding. Not only that, but the evidence of the lack of credibility is overwhelming. First, with regard to the asylum statements, the petitioner actually has filed the exact same statement twice, once in 1994 in his first asylum application. That was the one in which he claimed a lawyer filled it out, and when asked about various discrepancies in that statement, he claimed, oh, I recognize there are discrepancies, and I went out and tried to find the attorney who filled it out, but she had disappeared. So we clearly have him recognizing that there was a problem with it. However, when he filed the exact same statement in his second asylum application in 1999, that statement's at 217 in the record, which is actually signed by a preparer, he gave the exact literally word for word, except for a couple of different typos. So it was clearly reproduced for his second statement. The immigration judge asked him at the beginning of the hearing if it was true and correct at page 147 in the record. He indicated that it was. Then when he began testifying, as your honors noted, everything really just fell apart in his story. His statement said that he was in the police department for two and a half years, and he spent two and a half years in the hometown military reserves. That would be a total of five years. However, in his testimony, he stated that from 1971 through 1977, he spent six years in the military, and then he spent an additional 17 years after retirement from the military in the police service. So we're talking about a discrepancy of five years in the statement versus 23 years in the testimony. It just simply doesn't add up. The 1994 events that the court alluded to, the statement gave a very dramatic retelling of a raid that occurred with him capturing guerrillas and his truck being shot at. He was specifically asked about this by the immigration judge during the hearing. The immigration judge said, explicitly, did anything happen in 1994? And he said, no, only that his wife received some letters. That's at 139 through 141 in the administrative record. Even more glaring, there's nothing in his statement that his brother was killed. He testified that his brother was taken by guerrillas after they mistook his brother for him in 1993. And the court also found that such a dramatic event surely would have been mentioned in the statement if it had, in fact, actually happened. Was he asked about that? In the testimony? Yeah. Was he confronted with that? In fact, it only appeared in the testimony, Your Honor. There's no mention of that. Was he asked about why it wasn't in the application? I don't believe he was specifically asked. Well, actually, he was, and he admitted that he made a mistake in his application. That's at page 154 in the administrative record. And one of your points is, I take it, he made the same application twice? He made it twice, apparently with two different preparers, and knowing that, or at least claiming that it was made incorrectly the first time, why would he do it again and make the exact same mistake the second time? Procedurally, what happened in between? The second one was, I believe, the one in which I'm not sure. Actually, I'm not sure why he filed the second one. The first was 94. That's at page 371. And the second is at page 217. It's also important to note, on both of those statements, he listed himself as single, later claimed to be married. He also claimed he had no children. Now, suddenly, this other individual appears. And, in fact, he testified that he had twins at some point during this hearing. Who knows where this other individual is. Only one of the twins is actually listed as a derivative beneficiary here. The family threats. Absolutely no mention in the statement, mostly because logically he didn't claim that he had any family in either of the statements. And then, suddenly, in the testimony, he claims that there are these recent threatening letters. However, it's also significant that none of those letters mention him by name. They're completely anonymous, and it's unclear at whom they're actually directed. The 1975 and 1979 ambushes. Completely not mentioned in the statement. In his testimony, he claims that he was injured at both times by roadside bombs, receiving shrapnel wounds in 1975. That's at pages 122 through 125. And the 1979 bomb attack supposedly broke his leg. That's at 125 through 27. Again, if someone was dramatically wounded twice in the line of duty fighting guerrillas, you would think that that would obviously appear in the statement. Do we have any case law? I know we have case law excusing bad mistakes in statements because they're unrepresented or unfamiliar with the language or under stress or something. Do we have any case law discussing the reverse, which is the need for a statement to put in the dramatic episodes and relying on inconsistencies? Well, I mean, there's numerous cases in which the- Yeah, go ahead. I just wondered if you could- What's the closest case, though? I mean, I think we can really just look to the statute and to the guidelines. I mean, it is the petitioner's duty to bring forth the evidence and support his claims. Yeah, I'm just wondering because one of the principal arguments here is that the application doesn't jibe with the testimony. Absolutely. I understand there are also arguments that the testimony itself is inconsistent and rambling and unbelievable. But with respect to the inconsistency between omissions in the declaration and the testimony, what is the closest? Can you cite me some case where we discuss that? The statute is pretty general. I mean, yeah, it's- I mean, in Alvarez-Santos, the court talked about, that's 332 F. 3rd, 1245, talked about an asylum applicant who made a number of representations in both his statement and then failed to mention these dramatic details during his testimony and said that that fully supported an adverse credibility finding. And some of those are similarly dramatic, such as this, where individuals being killed, various raids. None of it jibes here. Counsel, Judge Gould, if I could ask you a question, please. Your Honor. Petitioner argued that the way the EIJ handled inconsistencies was not consistent with what I wrote in an opinion called soto alarte, and maybe it was repeated and stressed there or cited, but basically saying that as a matter of fairness that normally an EIJ, if he or she sees inconsistency, should give the alien a chance to explain and then in their opinion give some reasoning as to why they reject it. And so what's the government's view here? Are we at odds with soto alarte or shrestha, or is there an answer? Oh, I don't think we're at odds with it at all, Your Honor. There are numerous instances here where the immigration judge specifically allowed the petitioner to correct his testimony, to explain them. For instance, in 1994 events, repeatedly asked, Are you sure nothing happened in 1994? There's a presumption that the petitioner would be familiar with the statement he's twice submitted and claimed it was true and accurate. When he testified that his brother was killed, which was not a statement, he asked him, Well, why wasn't it in the asylum application? He said, Well, I guess I made a mistake. When asked why his family didn't appear and other inconsistencies in both of his statements, he tried to pawn it off on an attorney and say, Oh, well, it really wasn't my fault. And that's clearly belied by the fact that he submitted the same statement twice and he hasn't submitted any evidence that this attorney engaged in any misconduct. He hasn't filed an ineffective assistance claim against that attorney. He hasn't even identified that individual. In other words, he keeps making mistakes. And, you know, the immigration judge, really, there's nothing more that he could do. In fact, really at the conclusion of the testimony, his own lawyer asked him, and I quote, Is there anything else you would like to tell the immigration judge that you think he needs to know of your fear of returning to Guatemala? The petitioner responded, I have nothing else to say, and I thank you very much. This is a clear indication that if he thought there was anything inconsistent, if he thought there was any discrepancy he needed to clear up, he had the opportunity to do so and he failed to do it. Thank you. You have used your time. Are there any further questions? No. Thank you, Your Honor. Thank you, Your Honors. Counsel asked the Court to rely on a second application that was prepared in conjunction with a motion to reopen, and the Court asked procedurally what had occurred. Mr. Bacua did not receive notice at his address that he provided to immigration, and that is why the matter was reopened. The motion to reopen appears at pages 211 to 214, and that application is attached to it. It never was admitted into evidence, and therefore the judge never considered it, and it is argued that that is outside of this Court's consideration. Moreover, if so, if it's going to be considered, I asked that it be considered in conjunction with that motion to reopen, which also was filed in pro se. And, again, it contains the same bad grammar errors, does not appear to have been prepared by a legal professional. And as counsel pointed out, the application is pretty much verbatim of the original statement with errors. It does not appear that the preparer made any effort to make any corrections or notify Mr. Bacua of any errors in it. Secondly, this Court asked about case law, and counsel cited to Alvarez-Santos. I would just like to point out briefly that Alvarez-Santos stated that it would, despite having a poorly prepared asylum application, it is also required to have other evidence of dishonesty. And there's been no finding here that there's been other evidence of dishonesty from Mr. Bacua. Finally, the judge cannot presume that Mr. Bacua understands what he is asking if he is doing it in a roundabout way. He cannot presume that Mr. Bacua is familiar with his statement and understands that the judge thinks there's an inconsistency. The judge must specifically ask about an explanation and consider it. And the judge did not consider the explanation for the omission of the brother's death in his decision, and neither did the BIA. Thank you. You have your time. The case just argued is submitted for decision.
judges: McCuskey, Schroeder, Gould